**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Civ. Case No. 20-61925-CIV-SMITH

US MELON LLC,

Plaintiff,

vs.

LIGHTHOUSE TRANSPORTATION SERVICES, LLC., and JOSEPH MYERS,

Defendants.
_______________________________________/

## FIRST AMENDED COMPLAINT

Plaintiff US MELON LLC ("US MELON") files this First Amended Complaint against Defendants LIGHTHOUSE TRANSPORTATION SERVICES, LLC. ("LTS") and JOSEPH MYERS, and alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for monetary damages in excess of $75,000.00, exclusive of interest, costs, and attorney's fees, and for injunctive relief.

2. Jurisdiction over the Defendants is based upon 28 U.S.C. §1332.

3. Venue in this District is based on 28 U.S.C. §1404(a), in that forum selection clauses in the contracts attached hereto at Exhibits "A" and "B" provide that the exclusive forum for disputes is in Miami-Dade County, Florida, and is based on 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

4. Plaintiff US MELON is a Florida limited liability corporation whose principal place of business is at 1620 W Oakland Park Blvd, Suite 404, Oakland Park, FL 33311. US

MELON is engaged in the business of buying and selling wholesale quantities of fresh fruits and vegetables in interstate commerce, and was at all pertinent times a "Dealer," "Broker," and/or "Commission Merchant" as those terms are defined under the PACA, and was licensed under the PACA by the U.S.D.A., license # 20200500.

5. Defendant LTS is a Kentucky limited liability corporation, and its principal place of business is at 100 W 6th St., Covington, KY 41011-1410.

6. Defendant JOSPEH MYERS is an individual who resides in Kentucky, and at all material times he was a member and manager of LTS.

7. US MELON has satisfied all conditions to the bringing of this action, or alternatively same have been waived or excused.

8. US MELON has retained the undersigned attorney, and agreed to pay him attorney's fees, and is entitled to recover the attorney's fees pursuant to the Subscription Agreement at Article VI and the 2nd Operating Agreement at ¶15.10, and all other applicable law.

## GENERAL ALLEGATIONS

9. On August 21, 2018, US MELON was formed as a Florida limited liability company. The Articles of Organization named Sheehyung Sung is its "Manager."

10 During early April of 2019, JOSEPH MYERS expressed an interest in LTS becoming an owner of US MELON.

11. On April 9, 2019, US MELON member Sheehyung Sung sent LTS an email saying:

> "Please find below our current balance sheet. We started using Quickbook for simplicity purposes, but we are in the process of cutting over to Trueshot (brokering software with GL). The farms are not entered in the current Quickbook, nor the actual investments in them. This will be updated on to Trueshot before the end of the month. If you have any questions, please do let me know."

12. On April 10, 2019, LTS sent an email to US MELON members Sheehyung Sung and Ken Kodish asking about the valuation of membership interests and whether they anticipated that US MELON would make "a $1.5 million dollar profit in year one," and on the same day Mr. Sung wrote back that "As we discussed before, at the end of the day, start up company valuation is all over the map" and "At the end of the day, you are investing in the people and the concept."

13. On or about April 12, 2020, JOSEPH MYERS visited US MELON's office in Ft. Lauderdale, Florida, for two days and he was given the AP and AR, and Mr. Sung gave him his password so that he could access the computer, including the accounting software QuickBooks. During this time Messrs. Sung, Kodish, and JOSEPH MYERS discussed US MELON's ongoing business operations, including its advances to farmers, including a farm named MSM Groves, Inc., which is located in Florida.

14. On or about April 16, 2019, US MELON and LTS entered into a "Subscription Agreement" (Exhibit "A" hereto) which provided in pertinent part that:

(1) LTS purchased 10 membership units in US MELON;

(2) LTS would provide a line of credit to US MELON for $300,000.00 for general business; and

(3) LTS would provide a line of credit to US MELON for $500,000.00 for transportation business.

15. Pursuant to the Subscription Agreement, LTS provided a line of credit to US MELON, and LTS received 10 membership units in US MELON.

16. On November 6, 2019, JOSEPH MYERS was added as a signatory to US MELON's sole account at TD Bank.

17. During April of 2020, US MELON received a PPP loan in the amount of $39,500.00, which funds were deposited into US MELON's account at Central Bank and Trust, which account was controlled by JOSEPH MYERS.

18. On or about July 16, 2020, the members of US MELON signed a "Second Amended and Restated Operating Agreement for US MELON, LLC." (Exhibit "B" hereto) which provided in pertinent part as follows:

a. JOSEPH MYERS and Sheehyung Sung were the two managers (¶7.1);

b. LTS had 10 units, which represented a 10% ownership interest; and

c. the majority consent of the members was required to approve (¶6.12):

(1) the disposition of all or substantially all of the LLC's assets; and

(2) making any decision outside the ordinary course of business.

19. During August of 2020, JOSEPH MYERS, while a managing member and President of US MELON, and without informing the other members of US MELON and without authority, directed US MELON to disburse $150,000.00 from US MELON's two accounts to his other company LTS' account to repay a line of credit as follows:

| Date of Transfer | Amount of Transfer | Mode of Transfer (wire, check, etc) | Account from which funds were transferred: |
|---|---|---|---|
| 08/04/20 | $25,000 | ACH | TD Bank: #5065 |
| 08/13/20 | $39,500 | PPP funds - wire transfer | Central Bank and Trust: #94711 |
| 08/21/20 | $15,500 | Wire | TD Bank: #5065 |
| 08/25/20 | $70,000 | Wire | TD Bank: #5065 |
| | **150,000.00** | | |

20. At the time of the above transfers from US MELON to LTS:

a. the $110,500.00 that was distributed from US MELON's TD Bank account constituted trust funds under the Perishable Agricultural Commodities Act (the "PACA Trust Funds") that were owed to US MELONS' produce suppliers who were owed well over $250,000.00 in trust funds;

b. the $39,500.00 in PPP funds (the "PPP Funds") that were distributed from US MELON's Central Bank and Trust account was not permitted to be used to pay down the loan owed to LTS; and

c. US MELON was left with approximately $26,000.00 in its account at TD Bank, and $0.00 in its account at Central Bank and Trust, which was and is insufficient to meet its trust obligations under the PACA.

21. On August 31, 2020, US MELON held a board meeting and voted to remove JOSEPH MYERS as President and as a managing member of US MELON.

22. On September 3, 2020, US MELON, through its attorney, made a demand upon Defendants for the return of the PACA Trust Funds and the PPP Funds.

## COUNT I

### Injunctive Relief to Compel Turnover and Disgorgement of PACA Trust Assets

(Against LTS and JOSPEH MYERS)

23. US MELON realleges paragraphs 1 through 22 above.

24. The PACA at 7 USC §499e(c) provides in pertinent part as follows:

> "(2) Perishable agricultural commodities received by a commission merchant, dealer or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities of products, *shall be held by such*

> *commission merchant, dealer or broker* ***in trust*** *for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until such payment of sums owing in connection with such transactions has been received by such unpaid suppliers, seller or agents* . . . ; [Emphasis supplied]. 7 U.S.C. §499e(c)

25. Pursuant to the PACA, US MELON is a statutory trustee with the obligation to prevent the dissipation of the PACA trust funds that it holds, and to timely pay those trust funds to its produce suppliers who are the statutory beneficiaries.

26. At the time Defendants transferred the PACA Trust Funds to LTS, they knew that they were taking trusts funds that belonged to US MELONS' produce suppliers, and that their taking those PACA Trust Funds caused US MELON to be in breach of its trust obligations to those produce suppliers. Alternatively, Defendants knew of the foregoing when they received US MELON's demand letter.

27. Despite LTS' knowledge of the foregoing, LTS has failed and refused to return the PACA Trust Funds to US MELON.

28. LTS is not a bona fide purchaser for value of the subject PACA Trust Funds without notice of US MELON's breach of its PACA trust obligations.

29. LTS' refusal to return the PACA Trust Funds will result in irreparable harm to US MELON's trust beneficiaries since US MELON does not have sufficient trust funds to pay the trust beneficiaries, and that failure is likely to cause it to go out-of-business. Irreparable harm to the beneficiaries and resultant instability of produce companies is precisely what Congress sought to avoid by enacting the PACA.

WHEREFORE, US MELON respectfully requests that this Court enter judgment as follows:

a. Granting a temporary, preliminary, and permanent injunction enjoining LTS, its agents, officers, directors, subsidiaries, assigns, including JOSEPH MYERS, from dissipating, paying, transferring, assigning or selling the PACA Trust Funds, and compelling it to turnover the PACA Trust Funds to US MELON;

b. Awarding pre and post-judgment interest.

c. Awarding the US MELON court costs and attorneys' fees; and

d. Granting such other relief as this Court deems just and proper.

**COUNT II**

**Conversion of PACA Trust Funds and PPP Funds**

(Against LTS and JOSPEH MYERS)

30. US MELON realleges paragraphs 1 through 22 above.

31. LTS did not have a right to the PACA Trust Funds nor the PPP Funds, and failed to return them upon demand, and converted those funds to its own use. JOSEPH MYERS directed US MELON to convert those funds.

32. LTS' conversion caused US MELON to suffer damages.

33. At the time LTS converted the PACA Trust Funds and PPP Funds, it was foreseeable that US MELON would suffer consequential damages by getting sued by produce suppliers and other creditors, and by losing business ventures with growers, and potentially going out-of-business.

WHEREFORE, US MELON respectfully requests that this Court enter judgment against LTS and JOSEPH MYERS for compensatory damages, consequential damages, pre-judgment interest, attorney's fees, court costs, and such other relief as the Court deems just and proper.

///

## COUNT III

## Breach of 2nd Operating Agreement

(Against LTS)

34. US MELON realleges paragraphs 1 through 22 above.

35. The 2nd Operating agreement requires the consent of the majority of the member to transfer all or substantially all of the US MELONS' assets, and to make a decision outside the ordinary course of business.

36. LTS breached these obligations in the 2nd Operating Agreement by transferring US MELON's $150,000.00 to LTS.

37. LTS' breach caused US MELON to suffer damages.

38. At the time of the transfers, it was foreseeable that US MELON would suffer consequential damages by getting sued by produce suppliers and other creditors, and by losing business ventures with growers, and potentially going out-of-business.

WHEREFORE, US MELON respectfully requests that this Court enter judgment against LTS for compensatory damages, consequential damages, pre-judgment interest, attorney's fees, court costs, and such other relief as the Court deems just and proper.

## COUNT IV

## Breach of Subscription Agreement

39. US MELON realleges paragraphs 1 through 22 above.

40. Pursuant to the Subscription Agreement, LTS agreed to provide US MELON with a $300,000.00 line of credit from its bank of choice on behalf of US MELON to be used for general business.

41. LTS had the ability to provide the $300,000.00 line of credit.

42. LTS breached the Subscription Agreement by providing only a $150,000.00 line of credit, and by withdrawing the line of credit during approximately August of 2020, and doing so without notice to US MELON.

43. LTS' breach caused US MELON to suffer damages.

44. At the time of the breach, it was foreseeable that US MELON would suffer consequential damages by getting sued by produce suppliers and other creditors, and by losing business ventures with growers, and potentially going out-of-business.

WHEREFORE, US MELON respectfully requests that this Court enter judgment against LTS for compensatory damages, consequential damages, pre-judgment interest, attorney's fees, court costs, and such other relief as the Court deems just and proper.

**COUNT V**

**Breach of Fiduciary Duty**

(Against JOSEPH MYERS)

45. US MELON realleges paragraphs 1 through 22 above.

46. As a manager of US MELON, JOSEPH MYERS owed fiduciary duties of care and loyalty to the members of US MELON and to US MELON.

47. JOSEPH MYERS breached those fiduciary duties by transferring the PACA Trust Funds and the PPP Funds to his company, LTS.

48. JOSEPH MEYERS' breach caused US MELON to suffer monetary damages.

49. At the time of the transfers, it was foreseeable that US MELON would suffer consequential damages by getting sued by produce suppliers and other creditors, and by losing business ventures with growers.

WHEREFORE, US MELON respectfully requests that this Court enter judgment against JOSEPH MYERS for compensatory damages, consequential damages, pre-judgment interest, attorney's fees, court costs, and such other relief as the Court deems just and proper.

**COUNT VI**

**Breach of Fiduciary Duty**

(Against LTS)

50. US MELON realleges paragraphs 1 through 22 above.

51. As a member of US MELON, LTS owed fiduciary duties of care and loyalty to the members of US MELON and to US MELON.

52. LTS breached those fiduciary duties by agreeing with JOESPH MYERS to transfer the PACA Trust Funds and the PPP Funds to LTS.

53. LTS' breach caused US MELON to suffer monetary damages.

54. At the time of the transfers, it was foreseeable that US MELON would suffer consequential damages by getting sued by produce suppliers and other creditors, and by losing business ventures with growers.

WHEREFORE, US MELON respectfully requests that this Court enter judgment against LTS for compensatory damages, consequential damages, pre-judgment interest, attorney's fees, court costs, and such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

US MELON demands a trial by jury as to all issues so triable.

By: s/Robert E. Goldman
Robert E. Goldman, Esq. (FB#740799)
Robert@goldmanlaw.com
LAW OFFICE OF ROBERT E. GOLDMAN

1 East Broward Blvd., Ste. 700
Fort Lauderdale, FL 33301
Tel: (954) 745-7450
Fax: (954) 745-7460
Attorney for Plaintiff US MELON

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion was served via email on the below person at the below email address on October 25, 2020:

Brian R. Redden, Esq.
BUECHNER HAFFER MEYERS & KOENIG CO., LPA
221 E. Fourth Street, Suite 2300
Cincinnati, Ohio 45202-4125
Email: bredden@bhmklaw.com

By: s/Robert E. Goldman
Robert E. Goldman